**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Curtis Reis, Robert Bothner, D. Gregory Scott, Robert H. Thompson, Michael L. Abrams, and Daniel Jackson,<br><br>Plaintiffs,<br><br>v.<br><br>Federal Insurance Company, an Indiana corporation, and Does 1-10,<br><br>Defendant. | CV 11-09835 RSWL (MRWx)<br><br>**ORDER Re: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** [64] |

Currently before the Court is Defendant Federal Insurance Company's ("Defendant") Motion for Summary Judgment [64]. The Court, having reviewed all papers submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS:** The Court **GRANTS** Defendant's Motion for Summary Judgment.

1

**I. BACKGROUND**

This Action stems from a Complaint filed by Plaintiffs Curtis Reis, Robert Bothner, D. Gregory Scott, Robert H. Thompson, Michael L. Abrams, and Daniel Jackson (collectively "Plaintiffs") against Defendant [1, 22]. Plaintiffs, all of whom are former directors and officers of Alliance Bank of Culver City, California ("Alliance" or "Bank"), a now defunct community bank, were insured with Defendant under a three-year insurance policy ("Policy") issued to Alliance Bancshares California ("Bancshares") for the benefit of Alliance and its directors and officers. After the California Department of Financial Institutions ("CDFI") closed the bank in February 2009, the Federal Deposit Insurance Corporation ("FDIC"), acting as receiver for the bank, notified Defendant that there was a legal and factual basis for asserting a claim of negligence and breach of fiduciary duty against Plaintiffs, and the FDIC presented Defendant a monetary demand with respect to the claim. Defendant declined to offer Plaintiffs insurance coverage for the FDIC claim, citing the Policy's Regulatory Exclusion Endorsement and an insured-versus-insured policy exception — Exclusion 4c — as grounds for the denial. Plaintiffs commenced this suit two years later, alleging that Defendant breached the insurance policy contract and the implied covenant of good faith and fair dealing in refusing to offer Plaintiffs the

requested coverage, and seeking declaratory relief against Does 1-10.  Plaintiff filed a First Amended Complaint ("FAC"), the operative Complaint, on February 17, 2012 [22].  Defendant subsequently filed the present Motion for Summary Judgment as to Plaintiff's entire Complaint, arguing that Defendant properly denied Plaintiffs coverage for the FDIC claim [64].

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party.  <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1329 (9th Cir. 1983).

Where the moving party does not have the burden of proof at trial on a dispositive issue, the moving party may meet its burden for summary judgment by showing an "absence of evidence" to support the non-moving party's case.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986).

The non-moving party, on the other hand, is required by Fed. R. Civ. P. 56(c) to go beyond the

pleadings and designate specific facts showing that there is a genuine issue for trial. Id. at 324. Conclusory allegations unsupported by factual allegations are insufficient to create a triable issue of fact so as to preclude summary judgment. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993). A non-moving party who has the burden of proof at trial must present enough evidence that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." Anderson, 477 U.S. at 255.

In ruling on a motion for summary judgment, the Court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. Anderson, 477 U.S. at 255.

### III. ANALYSIS

**A.  Defendant's Evidentiary Objections**

Defendant objects generally to Plaintiffs' submission of Additional Material Facts in Support of Defendant's Motion for Summary Judgment ("Statement of Additional Facts")[76], arguing that it is not permitted by Federal Rule of Civil Procedure 56 or Local Rule 56-1. Defendant also makes thirty-five objections to various portions of the Statement of Additional Facts, primarily on grounds of lack of foundation and misstatement of evidence. Def.'s Objections p. 2-12. The Court **OVERRULES** Defendant's general objection to the Statement of Additional Facts because neither Rule 56 nor Local Rule 56-1 prohibit

submission of additional uncontroverted facts on a motion for summary judgment. Moreover, considering that the Court need not rely on any part of Plaintiffs' Statement of Additional Facts in analyzing the issues present in the current Motion, the Court **OVERRULES** Defendant's thirty-five specific objections as moot.

**B.    Motion for Summary Judgment**

Based on the undisputed facts and the following analysis, the Court **GRANTS** Defendant's Motion for Summary Judgment.

    1.    Plaintiffs' Breach of Contract Claim

Plaintiffs assert in the FAC that Defendant committed various acts in breach of the contractual duty to cover Plaintiffs for the FDIC claim. FAC ¶ 51. The Court addresses each of those alleged acts in turn.

        a.    *Refusing to Pay or Advance the Costs of Defending Plaintiffs from the FDIC Claim*

Plaintiffs claim that Defendant breached its duties under the Policy by "failing and refusing to pay or advance the defense costs of Plaintiffs in connection with the FDIC Claim." FAC 15:15-16. However, it is clear from the language of the Regulatory Exclusion Endorsement that Defendant had a right to refuse to defend Plaintiffs from the FDIC claim:

> [A]s respects the Directors & Officers Liability Coverage Section(s) of this policy, the Company shall not be liable for **Loss** on account of any **Claim** by, on behalf of, or at the behest of . . .

5

. [the] Federal Deposit Insurance Corporation . . . in any capacity whatsoever.
Newmann Decl., Ex. 27, p. 393 (emphasis in original).

It is undisputed that upon occurrence of certain "transactions or events" as specified in the MYPE, Defendant had the right to "impose such additional terms, conditions and limitations of coverage . . . as [Defendant], in its sole discretion, may require." Policy p. 38. Any additional terms, conditions, or limitations of coverage issued by Defendant pursuant to the MYPE became "effective as of the end of the Policy Year in which such transaction or event occur[red]." Id. It is also undisputed that transactions and events as defined by the MYPE occurred during the 2007-2008 Policy year. See Resp. to Am. Statement of Uncontroverted Facts & Conclusions of Law, Uncontroverted Fact No. 44. Thus, Defendant was merely acting within its rights when, in response to the occurrence of said transactions and events, it issued the Regulatory Exclusion Endorsement, effective at the end of the 2007-2008 Policy year, and subsequently denied Plaintiffs coverage pursuant to the Endorsement.

The Court is not persuaded by Plaintiffs' argument that summary judgment is precluded because of "triable issues" regarding the Regulatory Exclusion Endorsement. Even if, per Plaintiffs' contention, the MYPE provision requiring Bancshares to give notice to Defendant of triggering transactions and events "as soon as

practicable" was ambiguous, such ambiguity does not constitute a "material" fact precluding summary judgment.  See Anderson, 477 U.S. at 248.  It is clear from the plain language of the Policy that Defendant's right to modify the Policy was triggered upon the occurrence of a transaction or event as defined within the MYPE, *regardless* of whether Bancshares actually provided notice of the transaction or event.  See Policy p. 37, 38.  Thus, any ambiguity that arguably surrounded Bancshares' disclosure requirement did not affect Defendant's Policy modification right.

Similar reasoning dispels Plaintiffs' argument that summary judgment is precluded because of triable issues relating to confidentiality requirements and prejudice. Assuming, *arguendo*, that the FDIC and CDFI prohibited Bancshares from disclosing certain triggering transactions and events to Defendant, Plaintiffs do not establish how Bancshares' inability to disclose such information abrogated Defendant's modification right. As previously noted, Defendant's right to modify the Policy was based on *occurrence* of certain transactions or events as specified within the MYPE, not upon Bancshares *giving notice* of said events.  As to Plaintiffs' argument that summary judgment is precluded because Defendant has not shown that it was prejudiced by Bancshares' alleged failure to give notice "as soon as practicable," this argument does not succeed because Defendant's issuance of the Regulatory Exclusion

Endorsement was not based on Bancshares' failure to give notice; it was based on the occurrence of certain transactions and events as specified in the MYPE.

Additionally, the Court finds that Plaintiffs' assertion that Defendant violated statutory notice requirements prior to issuing the Regulatory Exception Endorsement lacks merit. The notice requirement of California Insurance Code § 678.1 does not apply to the facts of this case because Defendant did not decline to renew Bancshares' Policy or condition renewal of the Policy, as is required in order for Section 678.1 to apply. Furthermore, although Section 676.2(c) of the Code requires an insurer to give thirty-day notice prior to effecting a policy change "during the policy period," Defendant did not violate this Section because the Regulatory Exclusion Endorsement was not effected during the policy period. Section 676.5 of the Code provides that, for notice purposes, "a policy written for a term of more than one year shall be considered as if written for successive terms of one year." It is undisputed that Bancshares' Policy was issued for a three-year term. Accordingly, for purposes of California's statutory notice requirement, the Policy is considered to have been written for three successive one-year terms. Thus, the Regulatory Exclusion Endorsement, which was made effective as of October 17, 2008, did not represent a change made "during the policy period," but rather a change made at the end of

the 2007-2008 Policy year and beginning of the 2008-2009 Policy year.

Accordingly, the Court finds that the FDIC's claim against Plaintiffs was the type of claim contemplated by the Regulatory Exclusion Endorsement and that Defendant did not breach its contractual duties under the Policy in denying coverage to Plaintiffs pursuant to the Endorsement.

> b.   *Denying Insurance Coverage Based on Grounds that are Not Supported by, and are Contrary to, the Policy, the Law, Insurance Industry Custom and Practice, or the Facts*

Plaintiffs also claim that Defendant breached duties under the Policy by "asserting grounds for denying coverage that it knows are not supported by, and in fact are contrary to, the terms of the Policy, the law, insurance industry custom and practice, and the facts."  FAC 15:18-20.  However, the facts as presented to the Court belie this allegation.  As previously addressed, Defendant denied coverage, in part, because of the Regulatory Exclusion Endorsement, which was added as an express term to the Policy. Thus, the Court finds that Defendant's grounds for denying coverage were supported by the terms of the Policy, the law (see e.g., Am. Casualty Co. v. Baker, 758 F. Supp. 1340, 1348 (C.D. Cal. 1991)), and the facts, and that Plaintiffs' breach of contract claim

cannot withstand summary adjudication based on Plaintiffs' assertion to the contrary.

        c.   *Failing to Honor Promises and Representations in the Policy to Cover Plaintiffs' Defense Costs*

Plaintiffs further assert that Defendant breached contractual duties by "failing to honor its promises and representations in its Policy that it would pay, on behalf of each of the Insured Persons, Loss, which includes Defense Costs, on account of any Claim for 'Wrongful Acts.'" FAC 15:22-24. As previously discussed, Defendant's denial of coverage for the FDIC claim was justified by Policy Exclusion 4c and by the Regulatory Exclusion Endorsement. Accordingly, any prior obligation to cover Plaintiffs' defense costs was excused under the circumstances. Thus, Plaintiff's breach of contract claim does not withstand summary adjudication based on this allegation.

        d.   *Modifying the Policy "long after" the Policy's Inception*

Plaintiffs allege that Defendant also breached contractual duties by "attempting to modify the Policy long after the Policy's inception in violation of California law to exclude coverage for claims against Plaintiffs that otherwise would have been covered." FAC 15:24-26. To the extent that this assertion concerns Defendant's modification of the Policy, this issue has already been addressed by the Court. To the

extent that this assertion concerns the timing of Defendant's Policy modification, Plaintiffs only address this issue in the context of their bad faith claim, not their breach of contract claim. Opp'n 16:24-18:7. Thus, Plaintiff's breach of contract claim cannot withstand summary adjudication based on this allegation.

        e. *Remaining Breach of Contract Allegations*

Plaintiffs further assert that Defendant breached its duties under the Policy by "failing to conduct a full and thorough investigation of the FDIC Claim, and asserting grounds for denying coverage based on its inadequate investigation;" "failing to fully inquire into possible bases that might support coverage for the FDIC Claim;" and "giving greater consideration to its own interests than it gave to the interests of Plaintiffs." FAC 15:16-18, 20-21, 26-27. As the Party bearing the burden of proof at trial on the breach of contract claim, Plaintiffs must present enough evidence that a "fair-minded jury could return a verdict for the [Plaintiffs] on the evidence presented." Anderson, 477 U.S. at 255. Here, Plaintiffs have not presented sufficient evidence for a fair-minded juror to conclude that Defendant committed any of these alleged acts, let alone to find that such acts prove Defendant is in breach of contract. Accordingly, Plaintiff's breach of contract claim cannot withstand summary adjudication based on these allegations.

In sum, the Court **GRANTS** summary adjudication of Plaintiffs' breach of contract claim based on the undisputed facts and the reasons set forth above in favor of Defendant.

2. <u>Plaintiffs' Breach of the Implied Covenant of Good Faith and Fair Dealing Claim</u>

Plaintiffs also assert in the FAC that Defendant breached the implied covenant of good faith and fair dealing by committing various acts, which essentially mirror the acts alleged in support of Plaintiffs' breach of contract claim. FAC ¶ 54. The Court addresses each of those alleged acts in turn.

a. *Refusing to Defend Plaintiffs or Reimburse Their Defense Costs*

Plaintiffs claim that Defendant acted in bad faith by "[w]rongfully and unreasonably refusing to defend and/or reimburse Plaintiffs for the attorneys' fees and costs that they have incurred in their defense of the FDIC Claim, and continue to incur." FAC 16:14-16. As discussed above, the undisputed facts establish that the Regulatory Exclusion Endorsement barred coverage for the FDIC claim as asserted against Plaintiffs. Thus, the Court finds that Defendant did not act "wrongfully or unreasonably" in refusing to defend or reimburse Plaintiffs for their defense of the FDIC Claim and that Plaintiffs' assertion to the contrary cannot withstand summary adjudication.

b. *Denying Insurance Coverage Based on*

> *Grounds that are Not Supported by, and are Contrary to, the Policy, the Law, Insurance Industry Custom and Practice, or the Facts*

Plaintiffs also claim that Defendant acted in bad faith by "[w]rongfully and unreasonably asserting grounds for denying coverage that [Defendant] knows are not supported by, and in fact are contrary to, the terms of the Policy, the law, insurance industry custom and practice, and the facts." FAC 16:20-23.  However, as previously discussed, the undisputed facts establish that Defendant's grounds for denying coverage were supported by the terms of the Policy, the law, and the facts.  Thus, Plaintiffs' bad faith claim cannot withstand summary adjudication based on their assertion to the contrary.

      c.  *Failing to Honor Promises and Representations in the Policy to Defend Plaintiffs*

Plaintiffs further assert that Defendant acted in bad faith by "[f]ailing to honor its promises and representations in its Policy that it would defend its insureds in claims alleging Loss in connection with a Claim that alleged 'Wrongful Acts.'" FAC 17:1-3.  As previously discussed, Defendant's denial of coverage for the FDIC claim was justified by the Regulatory Exclusion Endorsement.  Accordingly, any obligation to defend Plaintiffs was excused under the circumstances.

Thus, Plaintiffs' bad faith claim cannot withstand summary adjudication based on this allegation.

        d.  *Modifying the Policy "long after" the Policy's Inception*

Plaintiffs allege that Defendant also acted in bad faith by "[a]ttempting to modify the Policy long after the Policy's inception in violation of California law to exclude coverage for claims against Plaintiffs that otherwise are covered." FAC 17:4-6. To the extent that this assertion concerns Defendant's modification of the Policy, this issue has already been addressed by the Court. To the extent that Plaintiffs allege that Defendant acted in bad faith by unreasonably delaying issuance of the Policy modification, the Court is not persuaded by Plaintiffs' argument in support thereof. The cases on which Plaintiffs rely for their unreasonable delay argument specifically address an insurer's duty to act promptly when 1) processing an insurance application or 2) conducting an investigation of insurability after issuance of an insurance policy, neither of which is at issue here. See <u>Barrera v. State Farm Mut. Auto Ins. Co.</u>, 71 Cal. 2d 659, 673 (1969); <u>Ranes v. Paul Revere Life Ins. Co.</u>, 32 F.3d 1393, 1398 (9th Cir. 1994). Plaintiffs baldly assert that the duty to act promptly "applies in all aspects of the insurer-insured relationship." Opp'n 17:4-5. However, they fail to provide legal support for the argument that the duty extends to situations where an

insurer chooses not to take immediate advantage of an existing opportunity to modify a policy.  See Hansen, 7 F.3d at 138.  Even if Defendant did have sufficient information as of August 2008 to make Policy changes similar to those that were made in February 2009, the Policy modifications were clearly predicated on the triggering transactions and events that occurred during the 2007-2008 Policy year, and it is undisputed that Defendant did not have knowledge of those events until February 6, 2009.  Therefore, to the extent that Defendant was under a duty to act promptly, the Court finds that Defendant did not unreasonably delay in modifying the Policy pursuant to the MYPE on February 26, 2009, twenty days after first learning of its right to do so.

Furthermore, although Plaintiffs assert that Defendant modified the Policy one day *after* receiving notice of the FDIC claim, Plaintiffs provide no evidence supporting this supposed timeline of events. In fact, Plaintiffs admit that it is "[u]ndisputed" that Defendant received Bernard Brodsky's letter on behalf of the FDIC on February 27, 2009.  See Response to Am. Statement of Uncontroverted Facts & Conclusions of Law, No. 60.  However, even if Defendant did receive Bernard Brodsky's letter on behalf of the FDIC one day before informing Plaintiffs of the Policy modifications, Plaintiffs have not established that Mr. Brodsky's letter qualifies as "claim notice."  Although

15

1  Mr. Brodsky gave Defendant "notice of potential claims"
2  by letter dated February 19, 2009, it is clear from the
3  language of the letter that Mr. Brodsky was not
4  actually asserting a claim at that point in time.  See
5  Lippsmith Decl., Ex. 24 (Mr. Brodsky stating that "[i]t
6  is believed that claims may conceivably be made against
7  the Insured's directors and officers," and "we will
8  provide more detailed information . . . if we believe
9  that specific claims will be asserted").  Thus, the
10 Court finds that Plaintiffs' bad faith claim cannot
11 survive summary adjudication based on their argument of
12 "unreasonable delay."
13          e.   *Remaining Bad Faith Allegations*
14      Plaintiffs further assert that Defendant acted in
15 bad faith by "[f]ailing to conduct a full and thorough
16 investigation of the FDIC claim and facts surrounding
17 the disputes, and asserting grounds for denying
18 coverage based on its inadequate investigation;"
19 "[f]ailing to fully inquire into possible bases that
20 might support coverage for the FDIC Claim;" and
21 "[g]iving greater consideration to its own interests
22 than it gave to the interests of Plaintiffs."  FAC
23 15:16-18, 20-21, 26-27.  As noted in the analysis for
24 similar assertions made under Plaintiffs' breach of
25 contract claim, Plaintiffs have not presented
26 sufficient evidence for a fair-minded juror to conclude
27 that Defendant committed these alleged acts, let alone
28 to find that such acts prove that Defendant acted in

bad faith.  Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing cannot withstand summary adjudication based on these allegations.

In sum, based on the undisputed facts and the reasons set forth above, the Court **GRANTS** summary adjudication of Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing in favor of Defendant.

### IV. CONCLUSION

Based on the foregoing analysis, the Court **OVERRULES** Defendant's evidentiary objections and **GRANTS** Defendant's Motion for Summary Judgment.  Moreover, because Plaintiffs have not identified the Doe defendants against whom Plaintiffs seek declaratory relief, despite having ample time to do so, the Doe defendants are dismissed from this Action.  See McKenzie v. Rossi-Hill, No. 07-CV-1752-AC, 2010 WL 2595560 at 1, n.2 (D. Or. Mar. 29, 2010), report and recommendation adopted, No. 07-CV-1752-AC, 2010 WL 2595537 (D. Or. June 23, 2010) aff'd, 459 Fed. Appx. 661 (9th Cir. 2011).

**IT IS SO ORDERED.**

DATED: July 12, 2013

RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge